Charles T. Major, J.
On several occasions during the trial of these claims, objections were made by the Attorney-General and by the attorney for the landlord, Thelma Pekofsky, as to the admission of testimony under the leases of claimants Henry J. McCall and Louis Good. At the end of claimants’ case and at the end of the trial, motions were made to dismiss the claims of Henry J. McCall and Louis Good. Decision thereon was reserved.
A clause in the McCall lease reads as follows: “In the event leased premises or any part thereof are taken by condemnation *359 or any government authority, the lessors shall not be liable to the lessee for any damages because of termination of said lease. Lessee reserves the right of exercising any claim he may have against those that may take said premises or any part thereof by condemnation or other government authority.”
A clause in the Louis Good lease reads as follows: “ In the event that the above premises shall be purchased by the State of New York or seized under any proceeding brought by said State, it is agreed that any claim for damages of any nature shall be between the tenant and the State of New York; said landlord shall in no way be obligated or liable to the said tenant for said change of ownership or seizure.”
From the language in both clauses, it is clear that the leases did not provide for their termination upon appropriation or condemnation, and both lessees reserved their claims for damages.
A lease is property and the owner thereof is entitled to its fair and reasonable market value at the time of appropriation. (Syracuse Grade Crossing Comm. v. Delaware L. & W. R. R. Co., 197 Misc. 192.) The State and not the landlord is the defendant in these claims and the liability for the lessees’ interests is that of the State. The foregoing provisions in the two respective leases are merely agreements not to bring suits against the landlord to collect damages.
The case of Matter of Mayor of City of N. Y. (Pier 39) (62 App. Div. 271, affd. 168 N. Y. 254), cited by the attorney for claimant Pekofsky, is distinguishable from the case at bar for the reason that in the cited case, the leases were to cease and terminate whenever the city instituted proceedings to acquire the property.
All objections made to the receipt of testimony concerning the clauses in these leases are overruled, and ail motions to strike out testimony or to dismiss the claims of the tenants are denied.
When leased property is acquired by eminent domain, in the absence of an agreement to the contrary, the fee owner and the lessee both have an interest in the total award. The lessees, as between themselves and the lessor, had a right to the possession and enjoyment of their leased premises for the unexpired terms, subject only to the payment of the rent reserved. Likewise, in the event of an increase in the value of the leased property, the lessees are entitled to the difference between the value of the lease at the time of the appropriation and the rent reserved. Claimant McCall had in fact contributed to the *360 Increase of the value, by expenditures for improvements after the commencement of his term.
To the extent of the value of the rights thus vested in the lessees, the lessor, by giving the leases diminished the value of her own estate. She had parted with and transferred to the lessees, the right of occupation for a term of years, and was only entitled to the rent reserved and the reversion. (Clarkson v. Skidmore, 46 N. Y. 297, 302, 303.)
To arrive at the amounts of the awards in favor of the fee owner and lessees, either one of two methods may be pursued. The court may ascertain the value of the entire premises and then apportion such value among the fee owner and tenants; or it may, in the first instance, appraise the value of each separate interest and thus ascertain the entire value. (Matter of Trustees of New York & Brooklyn Bridge, 137 N. Y. 95.)
In its proposed findings and conclusions of law, the State requested setoffs against claimants McCall and Good for occupancy of their leased premises after their appropriation, and against claimant Pekofsky for rents collected from these tenants from the date of appropriation to September 1,1956. No claims 'for these setoffs were made prior to or during the trial, and no notice oral or otherwise was given to claimants that such demands would be made.
A setoff is a money demand independent of and unconnected with the plaintiff’s cause of action. Under present practice, the term “ set ■ off ” is included within the term 11 counterclaim (Otto v. Lincoln Sav. Bank of Brooklyn, 268 App. Div. 400, affd. 294 N. Y. 798.) The counterclaim created by our statutes, embraces, exclusively, and is broader and more comprehensive than, recoupment and setoff. (Seibert v. Dunn, 216 N. Y. 237, 241.) A counterclaim must be pleaded in explicit terms and not left to inference. (Rice v. Grange, 131 N. Y. 149; Deeves & Son v. Manhattan Life Ins. Co., 195 N. Y. 324, 332, 333; Phillips v. Manufacturers Trust Co., 175 Misc. 1009, affd. 261 App. Div. 946.)
Bule 14 of the Buies of the Court of Claims provides: ‘ ‘ Where the state interposes a counterclaim, the same shall be pleaded in conformity with the provisions relating to claims, so far as applicable, and verified. The counterclaim shall be filed with the clerk and a copy thereof served on claimant’s attorney within twenty days after the service of the claim upon the attorney-general or within such time as may be ordered by the court, upon notice to the claimant’s attorney. At the time of filing the original counterclaim, five copies thereof shall be filed.”
*361 The requests by the State for setoffs must be and are denied.
A formal decision setting forth findings of fact and conclusions of law is filed herewith and the court has adopted or refused proposed findings and conclusions submitted by the parties as indicated thereon.